UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Theresa Moran,<br><br>                  Plaintiff,<br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                  Defendant. | No. CV 15-09407-SJO(AS)<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

## I. PROCEEDINGS

On December 4, 2015, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and disability insurance benefits.  (Docket Entry No

1). On April 15, 2016, Defendant filed an Answer to the Complaint, and the Certified Administrative Record ("A.R.") (Docket Entry Nos. 12-13).  The parties have consented to proceed before a United States Magistrate Judge.  (Docket Entry Nos. 9-10).  The parties filed a Joint Stipulation ("Joint Stip.") on July 27, 2016, setting forth their respective positions on Plaintiff's claims.  (Docket Entry No. 16).

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as a clerk in a Wonder and Weber's Bread bakery outlet (A.R. 56), asserts disability beginning March 1, 2009, based on the alleged physical impairments of degenerative disc disease, osteoporosis, fibromyalgia, and carpel tunnel syndrome ("CTS").  (A.R. 53-55; Joint Stip. 5).  On March 19, 2014, Administrative Law Judge ("ALJ"), Sally Reason, examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Kelly Bartlett.  (A.R. 56-78).  On May 19, 2014, the ALJ denied Plaintiff benefits in a written decision.  (A.R. 18-31).

The ALJ applied the five-step process in evaluating Plaintiff's case.  (A.R. at 18-27).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of March 1, 2009 and that Plaintiff's date last insured (DLI) was December 31, 2009.  (A.R. 21-22).  At step two, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, osteoporosis, and

"possibly fibromyalgia." (A.R. 23). The ALJ also found that Plaintiff did not have any upper extremity limitations prior to Plaintiff's DLI. (A.R. 22-23). In making this determination, the ALJ found no "objective confirmation evidence of any related function limitations" of Plaintiff's upper extremities. (A.R. 23). The ALJ noted that although there is evidence of an electrodiagnostic study in 2009, suggesting bilateral CTS, Plaintiff also had negative Tinel's and Phalen's tests bilaterally conducted around the same time and did not allege CTS as a disabling condition. (A.R. 23). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to perform light work in that she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand and walk 6 hours total in an 8-hour workday. (A.R. 24, 28).

In making this finding, The ALJ rejected favorable opinion evidence from Plaintiff's treating physician, Dr. Yoon, which addressed Plaintiff's upper extremity limitations. (A.R. 25-26). A RFC questionnaire that Dr. Yoon filled out in March 2012 asserts that Plaintiff is limited to lifting 5 pounds with marked limitations in manipulation or use of the upper extremities. (A.R.

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

438-39). The ALJ rejected Dr. Yoon's March 2012 questionnaire and April 2013 opinion letter, which stated similar findings, to the extent it assessed Plaintiff's disabled status through December 31, 2009, finding that because Dr. Yoon had not examined Plaintiff until November 23, 2009, "neither this examination nor his or other source evidence surrounding the period ending December 31, 2009, is particularly impressive."[2] (A.R. 26).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work because she was limited to light work. (A.R. 26). At step five, the ALJ found Plaintiff was able to perform jobs consistent with her age, education, and medical limitations existing in significant numbers in the national economy. (A.R. 26-27). In particular, Plaintiff could perform the requirements of retail cashier (Dictionary of Occupational Titles ("DOT") No. 211.462-014) and telephone solicitor (DOT 299.357.014), with transferrable skills in customer service, giving information, and retail sales. (A.R. 27, 233). Accordingly, the ALJ found that Plaintiff was not disabled.

Plaintiff requested that the Appeals Council review the ALJ's decision. (A.R. 1). The request was denied on May 19, 2014. (A.R. 1-5). The ALJ's decision then became the final decision of the

---

[2] The "source evidence" the ALJ referred to is likely the Tinel's and Phalen's tests and electrodiagnostic tests conducted by Plaintiff's previous physician, Dr. Huang, on August 31 and September 14, 2009, respectively. (A.R. 1192, 1205-07).

Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

### III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### IV. PLAINTIFF'S CONTENTION

Plaintiff alleges that, in assessing her residual functional capacity, the ALJ failed to properly consider the medical evidence contained in the opinions of her treating physician and the objective findings of other treating sources. (Joint Stip. 4-17, 12-13).

# V. DISCUSSION

After reviewing the record, the Court finds that the ALJ failed to make an RFC determination that accounted for the combined effects of all of Plaintiff's impairments when the ALJ rejected Dr. Yoon's opinion on Plaintiff's upper extremity functional limitations. The Court therefore remands for further consideration.

### A. The ALJ Erred in Assessing the Opinion of Plaintiff's treating Physician.

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 812 F.2d 747, 751 (9th Cir. 1989). The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). Controlling weight must be given to medical opinions of treating physicians where the opinion is well-supported and not inconsistent with the other substantial evidence in the record. Palomares v. Astrue, 887 F. Supp. 2d 906, 914 (N.D. Cal. 2012); Social Security Ruling ("SSR") 96-2p. To reject the uncontradicted opinion of a treating physician, the ALJ must give "clear and convincing reasons that are supported by substantial evidence." Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014)

citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.2005); Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting the opinion of Dr. Yoon, Plaintiff's treating physician. (Joint Stip. 5-7, 12-13). Plaintiff contends that Dr. Yoon had a "solid basis" for diagnosing Plaintiff with CTS during their first visit. (A.R. 6). Dr. Yoon had the opportunity to examine Plaintiff on November 23, 2009, and in making his diagnosis, relied on objective evidence — the positive electrodiagnostic test conducted by Dr. Huang in September 2009. (Joint Stip. 13). In response to the ALJ's assertion that Dr. Yoon did not have a "longitudinal picture" of Plaintiff's functional limitations by November 2009, Plaintiff claims that Dr. Yoon had "personal knowledge" of Plaintiff's conditions during her November 2009 visit, which was sufficient time to form a medical opinion regarding Plaintiff's upper extremity limitations. (Joint stip. 7).

Defendant contends that the ALJ properly rejected Dr. Yoon's opinion because (1) Dr. Yoon's notes provide little in the way of significant findings or a "detailed longitudinal picture of Plaintiff's condition prior to her DLI;" (2) Dr. Yoon referred to many conditions, including some that were in remission,

demonstrating a lack of knowledge of Plaintiff's actual health; (3) Dr. Yoon's apparent diagnosis was not the result of objective findings because it was listed in the chief complaint (i.e. "C.C.") section of his notes, which indicates that Plaintiff self-reported the condition as opposed to it being the result of an examination; (4) Dr. Yoon's diagnosis further lacks objective support because it conflicts with the negative Tinel's and Phalen's tests and lacks objective confirmation evidence of any related functional limitations; and (5) the only objective evidence of upper extremity limitations occurred after the DLI.  (Joint Stip. 8-12).

The ALJ's assertion that "Dr. Yoon did not examine the claimant until November 2009" and that his examination was "not particularly impressive" is not a clear and convincing reason to reject Dr. Yoon's opinion, especially when viewed in the context of Dr. Huang's earlier CTS diagnosis and treatment.  (A.R. 26).  While limited observation of a claimant is a good reason to give less weight to a physician's opinion, it is not a reason to discredit the opinion altogether.  See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996).  Dr. Yoon examined Plaintiff for CTS during her November 2009 visit and concluded in his March 2012 assessment and April 2013 letter, that Plaintiff had upper extremity limitations "probably from the time I first started to see her on 11/23/09" and was thereby precluded from lifting and carrying up to five pounds, carrying five to ten pounds, and "grasping, turning, and twisting objects, using her hands for fine manipulations, and using her arms for reaching."  (A.R. 438–441, 736, 865).

1  Additionally, Dr. Yoon's opinion is consistent with the
2 diagnosis and treatment carried out by Dr. Huang, Plaintiff's
3 previous treating physician. The ALJ ignores Dr. Huang's diagnosis,
4 despite its probative value. Godbey v. Apfel, 238 F.3d 803 (7th
5 Cir. 2000) (evidence that does not support the decision may not be
6 ignored, especially when the evidence is probative). Dr. Huang
7 diagnosed Plaintiff with bilateral CTS on September 14, 2009, after
8 completing the aforementioned electrodiagnostic test. (A.R. 1205).
9 Prior to the diagnosis, Dr. Huang did conduct a negative Phalen's
10 and Tinel's test on August 31, 2009, (A.R. 1192), but still
11 diagnosed Plaintiff with bilateral CTS based on objective test
12 results, which constitute substantial evidence. Roberts v. Shalala,
13 66 F.3d 179, 184 (9th Cir. 1995), as amended (Oct. 23,
14 1995)(objective testing in support of diagnosis meets substantial
15 evidence standard). Plaintiff suffered from hand numbness and pain,
16 giving a 5 out of 10 pain-score. (A.R. 1205, 1208). Dr. Huang
17 prescribed Plaintiff Vicodin to manage the pain, issued bilateral
18 wrist splints, and conducted a follow-up visit for the CTS on
19 October 14, 2009. (A.R. 1208, 1213, 1231). In light of this
20 evidence, the ALJ improperly relied on the negative Phalen's and
21 Tinel's tests to reject Dr. Yoon's opinion regarding Plaintiff's
22 upper extremity limitations.
23
24  Defendant claims that Dr. Yoon's diagnosis is not credible
25 because the CTS diagnosis was listed in the chief complaint section
26 of his Doctor's notes, which may indicate that Plaintiff self-
27 reported this diagnosis during the first visit, thus, limiting its
28

objective weight. (Joint Stip. 11). Yet, Plaintiff asserts that Dr. Yoon based the CTS diagnosis on the September 2009 electrodiagnostic test and examination. (Joint Stip. 12-13). The record is unclear on this matter in part because Dr. Yoon's records failed to include the method of examination and the source of the CTS diagnosis.[3] (See A.R. 865). Greater clarification may be useful to determine whether Dr. Yoon's opinions were informed by objective evidence during the November 2009 visit. Even if Dr. Yoon's diagnosis was based on subjective factors, the ALJ was required to give his opinion some weight. Lester, 81 F.3d at 832–33 ("Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments.").

Moreover, the ALJ's finding that "other source evidence" regarding upper extremity limitations was "not particularly impressive" is not supported by substantial evidence. As discussed, Dr. Huang made a final diagnosis based on objective evidence and carried out a treatment plan. (A.R. 11921, 1205, 1208-1213). The ALJ failed to provide any justification for rejecting this or explaining why Dr. Huang's diagnosis did not support Dr. Yoon's opinions. (A.R. 26). Lester, 81 F.3d at 832. (A similarity of conclusions between doctors provides reason to *credit* the opinions of both doctors as opposed to reject).

---

[3] Dr. Yoon's handwriting is mostly illegible regarding the CTS examination itself. (See A.R. 865).

The ALJ also eludes that because there is no objective evidence of Plaintiff's related functional limitations, Dr. Yoon's opinion should not be considered in the RFC assessment. (A.R. 23, 26). However, there is evidence that Dr. Huang prescribed bilateral splints and pain medications, which demonstrates some objective limitations regarding Plaintiff's ability to use her hands. (A.R. 1205-1213). Furthermore, while CTS alone may not have severely limited Plaintiff's upper extremity functions, "when considered with limitations or restrictions due to other impairments," such as degenerative disc disease and possible fibromyalgia, a CTS diagnosis may "be critical to the outcome of a claim." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Dr. Yoon opined that Plaintiff's pain in her joints and fatigue preclude Plaintiff from using her upper extremities. (A.R. 736). The ALJ erred in not considering this this limitation in her assessment of Plaintiff's RFC.

The ALJ also noted that the CTS diagnosis should not be considered in the RFC assessment because Plaintiff did not allege the condition in her application or on appeal. (A.R. 23). It is unreasonable to infer solely from Plaintiff's failure to mention a CTS diagnosis in her benefits application that the condition did not hinder Plaintiff's ability to use her upper extremities. See Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (ALJ erred in not considering the functional limitations an injured thumb imposed on claimant solely because claimant failed to list the injury in his benefits application).

**B. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ's analysis did not properly address Dr. Huang and Dr. Yoon's concurring diagnoses regarding plaintiff's upper extremity limitations and their effect on Plaintiff's functional limitations prior to the DLI. The record does not establish that the ALJ would necessarily be required to find Plaintiff disabled if (1) Plaintiff's upper extremity limitations were considered in the RFC assessment; (2) Dr. Yoon's CTS diagnosis was given some weight; and (3) Dr. Huang's concurring diagnosis was addressed. Remand is therefore appropriate.

The Court has not reached issues not discussed supra except to determine that reversal with a directive for the immediate payment

of benefits would be inappropriate at this time.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 3, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE